# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| Des-Case Corporation, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:17-cv-01239** |
| | ) | |
| Madison Industries Holdings LLC, | ) | **Judge Trauger** |
| Filtration Group, LLC, and | ) | |
| Todd Technologies Inc LLC | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED AMENDED COMPLAINT OF DES-CASE CORPORATION

Des-Case Corporation ("Des-Case") for its complaint against Defendants Madison Industries Holding LLC ("Madison Industries"); Filtration Group, LLC ("Filtration Group"); and Todd Technologies Inc LLC (collectively "Defendants"), states as follows:

## I.  PARTIES

1.      Des-Case Corporation is a Tennessee corporation with its principal place of business located at 675 N. Main Street, Goodlettsville, Tennessee 37072-1302.

2.      Upon information and belief, Madison Industries is a Delaware limited liability company with its principal place of business located in Chicago, Illinois, and with an individual named John Udelhoffen, of 500 W Madison St., Suite 3890, Chicago, Illinois, as its registered agent for service of process. Upon information and belief, Madison Industries is a holding company that owns a number of other entities, including Defendant Filtration Group and another entity named Global Filter, LLC.

3.      Upon information and belief, Filtration Group is a Delaware limited liability company with its principal place of business located in Joliet, Illinois, and CT Corporation System of 208 So. LaSalle St., Suite 814, Chicago, Illinois, as its registered agent for service of

process. Upon information and belief, Filtration Group is a parent company of Global Filter, LLC.

4.      Upon information and belief, Todd Technologies Inc LLC is a Colorado limited liability company with its principal place of business located at 4699 Nautilus Court South, Suite 404, Boulder, Colorado 80301, with an individual named Todd A. Younggreen of 2900 Linden Drive, Boulder, Colorado 80304, as its registered agent for service.

## II. JURISDICTION AND VENUE

5.      Subject matter jurisdiction is proper in this matter pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332, and 1338(b). This Court has supplemental jurisdiction over the state and common law claims under 28 U.S.C. §§ 1338(b) and 1367(a). As an additional and alternative basis of jurisdiction, Plaintiff would state that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 and that the amount in controversy is well in excess of $75,000.00.

6.      This Court has personal jurisdiction over these Defendants because Defendant Madison Industries purposely targeted Des-Case, which it knew was located in the State of Tennessee and in this district, in an effort to purchase it. Madison Industries entered into a contract with Des-Case as the subject and third party beneficiary. Representatives of both Madison Industries and its affiliate Filtration Group traveled to Tennessee and participated in tours of Des-Case facilities and other meetings in which they obtained confidential information and trade secrets. Madison Industries made an offer to purchase Des-Case in Tennessee. After this offer was unsuccessful, Madison Industries and Filtration Group formed Todd Technologies as more fully described below. Together, Madison Industries, Filtration Group, and Todd Technologies conspired to and did

misappropriate Des-Case's trade secrets, interfere with Des-Case's business relations, unfairly compete with Des-Case, and pass their own desiccant breathers off as those of Des-Case. Defendants' tortious acts both involved the targeting of customers in Tennessee and included a specific intention to mimic and harm a Tennessee company. Their efforts included attempts by Filtration Group and Todd Technologies representatives to take business from at least two of Des-Case's customers located in Tennessee and participation by representatives of both Filtration Group and Todd Technologies in a trade show in Nashville, Tennessee during which they distributed brochures and samples of the desiccant breathers in question. Todd Technologies also maintains an interactive website which allows persons in Tennessee to purchase its desiccant breathers for shipment to Tennessee. By participating in these activities, Todd Technologies also ratified Madison Industries and Filtration Groups' misappropriation of trade secrets that they obtained from and while physically in Tennessee. Accordingly, Defendants are subject to service of process pursuant to Tennessee's Long Arm Statute, Tenn. Code Ann. § 20-2-214(a), and exercise of personal jurisdiction over them is constitutionally proper.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the acts complained of herein have caused harm to Plaintiff in this district and Plaintiff's intellectual property that has been harmed by the acts complained of herein is substantially located in this district.

## V.    FACTS

8.  Des-Case is a global manufacturer of specialty filtration products that improve process equipment reliability and extend oil life. For more than 30 years, the company has offered

3

a broad array of products to various manufacturing industries to help prolong the life of industrial lubricants and fuels by minimizing waste, increasing equipment life, and reducing downtime.

9.    Des-Case pioneered a type of equipment known as desiccant breathers. Desiccant breathers are air filter and water vapor removal systems designed to replace traditional breather caps on fluid containing reservoirs, storage tanks, and gear boxes. The breathers eliminate moisture and contaminants in these systems, thereby improving performance and extending life of expensive manufacturing equipment. Des-Case's breathers serve a variety of industries, including the pulp and paper mill industry, airport ground support equipment, power plants and utilities, automotive and aerospace manufacturing, diesel-powered generators, food processing plants, chemical and petrochemical plants, oil drilling, wind turbines, and off-road vehicles, among others.

10.   In 2014, Defendant Madison Industries indicated an interest in purchasing Des-Case and made an offer to purchase it at that time. Pfingsten Partners, Des-Case's then majority owner, was not interested in the offer and negotiations ended. No confidential information about Des-Case was shared with Madison Industries or its affiliates with respect to this offer to purchase. No Madison Industries related entity entered the market for desiccant breathers at this time.

11.   More recently, in late 2015 or early 2016, Pfingsten Partners, began to explore the prospect of selling Des-Case on a more formalized basis and entered into an agreement with Craig-Hallum Capital Group, LLC ("Craig-Hallum") to explore the sale of the company and recruit bidders. The proposed sale of Des-Case with Craig-Hallum was known by the code name "Project Purify."

4

12. During Project Purify, Madison Industries again expressed an interest in exploring a purchase of Des-Case.

13. On February 22, 2016, Craig-Hallum entered into a Confidentiality and Non-Disclosure Agreement ("NDA") with Madison Industries which provided that Craig-Hallum and Des-Case would share extensive confidential information about "Purify" or Des-Case for the sole purpose of allowing Madison Industries to determine if they wanted to purchase Des-Case. Des-Case was a third-party beneficiary of the NDA, which is attached to this Complaint as **Exhibit A**, but was not a signatory to it.

14. The NDA defined "Confidential Information" as including, but not limited to:

> Information related to the terms, conditions or other facts with respect to the Transaction, including the status thereof, the fact that the Disclosing Party has retained Craig-Hallum as an advisor and that discussions or negotiations involving the Disclosing Party and the Receiving Party are taking place concerning the Transaction, the terms of this agreement, information related to the Disclosing Party's technology, inventions, protocols, ideas, methodologies, projections, operations, finances, venders, suppliers, customers and employees, discoveries, concepts, know-how, techniques, designs, specifications, drawings, blueprints, tracings, diagrams, models, samples, charts, data, analysis, compilations, studies, formulas, ingredients descriptions, volumes, processes, procedures, bid proposals, computer programs, marketing plans, lists of names and addresses and related information, information attained from any customer of Disclosing Party and from Third Parties, and other technical, financial or business information.

> NDA at ¶ 1.

15. The NDA provided that Madison Industries was to be given highly confidential information about Purify or Des-Case for the sole purpose of evaluating a proposed Transaction:

> The Receiving Party and its Representatives shall hold the Confidential Information in strict confidence and take commercially reasonable precautions to protect the confidentiality

5

of the Confidential Information. **The Receiving Party and its Representatives shall not make any use whatsoever at any time of any Confidential Information except solely in connection with its evaluation of a Transaction.** Receiving Party and its Representatives shall not disclose the Confidential Information to any person or entity, except that the Receiving Party may disclose Confidential Information to those of its Representatives who need to know the Confidential Information for the purpose of evaluating the Transaction. For purposes hereof, "Representatives" means directors, officers, employees, financing sources, financial advisors, legal counselors, consultants and agents who receive Confidential Information from or are made aware of the Transaction by the Receiving Party. **Confidential Information shall not be shared with Affiliates of the Receiving Party nor should they be made aware the Receiving and Disclosing Party are in discussions regarding a Transaction.** The Receiving Party will inform each Representative who is given access to Confidential Information of the confidential nature of the information and direct each Representative to comply with the terms hereof. **The Receiving Party agrees to be responsible for all actions or inactions contrary to the terms hereof by any of its Representatives.**

NDA at ¶ 2 (emphasis added).

16.     Craig-Hallum did, in fact, share Des-Case's confidential information and trade secrets with Madison Industries pursuant to the NDA for the sole purpose of allowing Madison Industries to evaluate whether it wanted to purchase Des-Case.

17.     Specifically, Craig-Hallum shared confidential information with Madison Industries including, but not limited to, Des-Case's methodologies, projections, operations, finances, vendors, suppliers, customers, employees, know-how, techniques, designs, specifications, data, analysis, studies, processes, procedures, and product details, and other technical, financial or business information (the "Des-Case Confidential Information and Trade Secrets"). Because Des-Case is head-quartered in Tennessee, its Confidential Information and Trade Secrets reside in the State of Tennessee.

6

18.     The Des-Case Confidential Information and Trade Secrets are highly confidential and are subject to policies and procedures to ensure they are kept that way. Specifically, the Des-Case Confidential Information and Trade Secrets are not shared with anyone outside the company without the protection of a confidentiality and non-disclosure agreement and without a specified Des-Case-related business need for the sharing of it. Moreover, most of this information is only disclosed to Des-Case employees on a need to know basis and employees are also subject to confidentiality and non-disclosure obligations. Des-Case uses on-site security measures such as locked and monitored facilities and nested passwords and/or protected drives on its systems to protect its Confidential Information and Trade Secrets.

19.     Madison Industries was extremely interested in Des-Case during Project Purify. Its President, CEO, and Chairman of the Board, Larry Gies, personally reached out to Brian Gleason, President and CEO of Des-Case, who resides in Tennessee, to compliment Des-Case's marketing and ask for further detail, rather than to go through Craig-Hallum, as required by § 3 of the NDA. Accordingly, Mr. Gleason provided the requested information from Tennessee on behalf of Des-Case after obtaining the supervision and permission of Craig-Hallum. Mr. Gies' conduct in ignoring this provision of the NDA amounts to a breach of the NDA that occurred in Tennessee.

20.     Filtration Group also participated in the exchange of information during Project Purify as a representative of Madison Industries. Upon information and belief, the reason for this was that Filtration Group would have been the Madison Industries owned entity that would have absorbed Des-Case if Madison Industries had been successful in purchasing Des-Case.

21. Additionally, as part of the sales process facilitated by Craig-Hallum, Gies; Steve Felice, then President and CEO of Filtration Group; and John Udelhoffen, Senior Vice President of Finance and Treasurer for Madison Industries, visited Des-Case's Facilities in Tennessee. This visit occurred on or about April 18, 2016. During this visit, under the supervision of Craig-Hallum, Des-Case shared substantial confidential information with these representatives of Madison Industries and Filtration Group including providing a tour and explanation of the facilities and production processes during which Gies stopped employees on the floor and asked them questions, reviewing all the products Des-Case produces, and discussing confidential financial information including in relation to the desiccant breather business and marketing strategy for desiccant breathers. The information shared also included highly confidential information on future desiccant breather technology that was under development by Des-Case and disclosure and use of which would greatly damage Des-Case.

22. Madison Industries ultimately made a bid for the company that was unsuccessful. Another bidder, Industrial Growth Partners, became the successful purchaser of Des-Case, with Pfingsten Partners retaining a minority interest.

23. Upon information and belief, once it learned how successful Des-Case is and had the benefit of Des-Case's Confidential Information and Trade Secrets, Madison Industries and Filtration Group conspired to misappropriate Des-Case's intellectual property to make a market entry decision separate and apart from evaluation of the Transaction, to create a competitive line of nearly identical desiccant breathers, and to market them in an improper manner so as to create consumer confusion and pass them off as Des-Case products or the same as Des-Case products. To that end, Des-Case asserts that Madison

8

Industries and Filtration Group shared Des-Case's confidential information with Terry and Todd Younggreen in order to improperly use this information to design and market Defendants' own competing line of desiccant breathers. Madison Industries, Filtration Group, and the Younggreens subsequently formed Todd Technologies for this purpose.

24. Upon information and belief, Terry and Todd Younggreen are brothers that are both closely connected to two Madison Industries-related entities, namely Filtration Group and Global Filter. Upon information and belief, Todd Younggreen is the former President and CEO of Global Filter and currently continues to represent Filtration Group in some capacity. Upon information and belief, Terry Younggreen serves or has served as the Vice President of Operations at Global Filter. Upon information and belief, Global Filter is a subsidiary of Defendant Filtration Group. Todd Technologies is a Filtration Group Company.

25. Shortly after Madison Industries' unsuccessful bid to purchase Des-Case, on or about May of 2017, Todd Technologies Inc LLC was registered as a corporation in Colorado. Todd Technologies' CEO is Terry Younggreen and its registered agent is Todd Younggreen. Todd Technologies' website displays a picture of Todd Younggreen and what appears to be his phone number under the heading "President's Message" but does not list his name.

26. Todd Technologies and Filtration Group are now actively marketing and selling three lines of desiccant breathers, a product and business line that Filtration Group had never previously sold. Des-Case asserts that it is not possible for Defendants to launch a product line that it has not previously sold without using any of Des-Case's improperly obtained Confidential Information and Trade Secrets.

9

27. Todd Technologies maintains an interactive website from which it is possible to directly purchase desiccant breathers while in Tennessee for shipment to Tennessee.

28. It is common in the market for desiccant breathers for companies that source these products to contract with other companies to sell their desiccant breathers under a private label. However, a sophisticated customer in this industry can readily tell whether any given desiccant breather was produced by Des-Case or another competitor because the products are clearly distinct from one another including in appearance.

29. The desiccant breathers that Filtration Group and/or Todd Technologies are offering are nearly identical in appearance to Des-Case's breathers, such that they appear to have been designed to confuse customers into believing they are a Des-Case product. The lines of products include Power Breathers under the Todd Technologies brand, Power Breathers-CV under the Todd Technologies brand, and Desiccant Breathers-CV under the Filtration Group brand.

30. While the desiccant breathers are nearly identical to those of Des-Case in appearance, tests Des-Case has conducted on the desiccant breathers sold by Filtration Group and Todd Technologies indicate that the non-Des-Case breathers are significantly less likely to withstand any type of stress than the desiccant breathers produced by Des-Case.

31. Filtration Group and Todd Technologies also are using nearly identical marketing methods and materials to market their breathers, including plagiarized ad copy from Des-Case's marketing materials, and what are believed to photo-shopped graphics from Des-Case's marketing materials, and an essentially identical product coding structure.

32. Page 2 of one Filtration Group branded breather brochure contains a paragraph at the top that is plagiarized in significant part from the paragraph at the top of page 2 of Des-Case's brochures for its desiccant breathers.

33. Additionally, page 2 of the Filtration Group branded breather brochure and the Todd Technologies branded breather brochures contain a cut out drawing that is nearly identical to the cut out drawing on page 2 of the Des-Case brochures. The only difference appears to be the shape of the demonstrative arrows in the drawing and the absence of structures on the bottom of the center tube in the drawing. However, these structures are present on the Filtration Group and Todd Technologies products even though not reflected in the drawing. Additionally, the drawing in the Todd Technologies and Filtration Group brochures appears to have a lip on the bottom edge of the unit, which is present only in Des-Case products and not on the Filtration Group and Todd Technologies products. Upon information and belief, the image in the Filtration Group and Todd Technologies brochures is a version of the image in Des-Case's copyrighted brochures for its own desiccant breathers that Defendants altered in small ways using Adobe Photoshop.

34. Des-Case asserts that Defendants have made every effort to deceive the marketplace into believing that their desiccant breathers are the same as Des-Case's products and its conduct amounts to palming off Defendants' goods as if they were those of Des-Case. Moreover, Defendants have called on and attempted to take the business of two specific entities that are listed as important distribution partners in the Confidential Information shared with Madison Industries and Filtration Group.

35. On or about August 17, 2017, Nick Gustafson, a sales representative for Filtration Group contacted one of the customers that had been listed as an important distribution partner in the Confidential Information about purchasing Filtration Group and Todd Technologies desiccant breathers. Gustafson also sent brochures for each of these products. The customer contacted is a sophisticated customer. Upon receiving this information from Gustafson, the customer contacted Des-Case believing the Filtration Group and Todd Technologies branded desiccant breathers to be Des-Case desiccant breathers being sold under a private label.

36. On or around October 2017, one of Des-Case's customers with locations in Tennessee received and passed on to Des-Case a piece of literature from Todd Younggreen that introduced Todd Technologies as a new Filtration Group company and contained the contact information for both Filtration Group and Todd Technologies representatives. One of the Todd Technologies representatives was an individual named Chase Younggreen. This literature also listed contact information for Todd Younggreen and listed him as the President of Todd Technologies. It further stated that Filtration Group and Todd Technologies would be participating in a trade show in Nashville, Tennessee in early November 2017.

37. One of Des-Case's largest and fastest growing customers for desiccant breathers is Waco, a subsidiary of Filtration Group. Waco is located in Nashville, Tennessee. Upon information and belief, Waco has been receiving pressure from Filtration Group to purchase desiccant breathers from Filtration Group and Todd Technologies instead of from Des-Case. Upon information and belief, Filtration Group has knowledge of Waco's suppliers.

12

38.     Representatives of both Filtration Group and Todd Technologies attended the North American Vendor Fair in Nashville, Tennessee which was held in early November 2017. At this vendor fair, Des-Case representatives observed Filtration Group and Todd Technologies representatives passing out samples and brochures for their desiccant breathers.

39.     Upon information and belief, Madison Industries, Todd Technologies, and Filtration Group were all aware that they were targeting a company located in Tennessee when they jointly conspired to misappropriate its confidential information and trade secrets in order to unfairly compete with Des-Case and also when they conspired to pass off their own desiccant breathers as those of Des-Case. Upon information and belief, all three Defendants were aware and intended to harm Des-Case, which harm has been felt in the State of Tennessee.

40.     Based on Todd Technologies and Filtration Group's new entrance in the desiccant breather space, Des-Case asserts, upon information and belief, that Madison Industries and Filtration Group have improperly shared Des-Case's Confidential Information with their Affiliates and used or referenced such information to reach a decision to compete and for the purpose of creating a competing product line and that such conduct constitutes some of the causes of action as set forth below.

## III. CAUSES OF ACTION

### COUNT ONE:
### BREACH OF CONTRACT AGAINST MADISON INDUSTRIES

41.     Des-Case incorporates by reference all paragraphs above as if fully restated herein.

42. Craig-Hallum and Madison Industries entered into an NDA with Des-Case as a Third-Party Beneficiary.

43. This agreement obligated Madison Industries to only use Des-Case's confidential information for the purpose of evaluating the Transaction – a possible purchase of Des-Case.

44. This agreement obligated Madison Industries to maintain the confidentiality of Des-Case's information and not to share it with any Affiliates.

45. Upon information and belief, Madison Industries has breached the agreement by sharing Des-Case's Confidential Information with its Affiliates, including, but not limited to, Todd and Terry Younggreen, Todd Technologies, and Filtration Group.

46. Des-Case has been immediately and irreparably harmed by Madison Industries' breach of the agreement, including damages to its customer relationships and its business.

47. Madison Industries is liable to Des-Case in an amount to be proven at trial, including liability for Des-Case's reasonable attorney fees and costs.

## COUNT TWO:
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

48. Des-Case incorporates by reference all paragraphs above as if fully restated herein.

49. Madison Industries, Todd Technologies, and Filtration Group have engaged in a conspiracy to:

   a. pass off their products as being those of Des-Case;

   b. create a likelihood of and actual confusion about the source of their products;

   c. interfere with Des-Case's existing and prospective business relations;

   d. have Madison Industries breach its NDA with Craig-Hallum;

   e. obtain Confidential Information and Trade Secrets regarding all manner of Des-Case's business and customers;

14

f.      use this information to unfairly compete with Des-Case and to steal its customers and business line;

g.      infringe upon Des-Case's intellectual property; and

h.      otherwise unfairly compete with Des-Case.

50. Defendants have a common design to accomplish these unlawful purposes by concerted actions and through unlawful means and these acts have occurred in or the harm caused by them has occurred in Tennessee.

51. Defendants have accomplished their unlawful purpose by working together to market products that are nearly identical to those of Des-Case, using marketing materials that are very similar to those of Des-Case, and by seeking to take business from Des-Case's existing and prospective customers including through activities in Tennessee and directed at customers in Tennessee;

52. Defendants have further accomplished their unlawful purpose by obtaining for Defendants' use Des-Case's Confidential Information and Trade Secrets including while present in Tennessee and by otherwise misappropriating Des-Case's intellectual property.

53. Defendants have committed overt acts in furtherance of this conspiracy including targeting customers in Tennessee.

54. Des-Case has been immediately and irreparably injured in the State of Tennessee as a direct and proximate result of Defendants' actions in concert.

55. Defendants are jointly and severally liable to Des-Case in an amount to be proven at trial.

**COUNT THREE:**
**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS AND/OR**
**PROSPECTIVE BUSINESS ADVANTAGE**
**AGAINST ALL DEFENDANTS**

56. Des-Case incorporates by reference all paragraphs above as if fully restated herein.

57. Defendants have intentionally interfered with Des-Case's business relationships with its customers who Defendants knew to be Des-Case's customers, by wrongfully and improperly, with improper motive, trying to pass their products off as those of Des-Case and cause consumer confusion about the source of their products in an effort to cause Des-Case's customers to breach their contracts with Des-Case, and seeking to convert Des-Cases' customers and prospective customers for their own business.

58. Defendants also have intentionally interfered with Des-Case's business relationships with its customers who Defendants knew to be Des-Case's customers, by wrongfully and with improper motive or improper means, using Plaintiff's Confidential Information and Trade Secrets in an effort to cause Des-Case's customers to breach their contracts with Des-Case, and seeking to convert Des-Cases' customers and prospective customers for their own business.

59. The Defendants' actions are causing irreparable harm to Des-Case's business, and they will continue to do so unless permanently enjoined by the Court

60. Defendants are jointly and severally liable to Des-Case in an amount to be proven at trial, including treble damages to the extent permitted by law.

## COUNT FOUR:
## UNFAIR COMPETITION UNDER THE LANHAM ACT AGAINST ALL DEFENDANTS

61. Plaintiff realleges the allegations of all paragraphs above and incorporates them herein by reference.

62. Defendants accessed Des-Case's Confidential Information and Trade Secrets for an improper purpose—a purpose other than assessing the value of the company to make a bid—and they forwarded the information to unauthorized third parties who had no permission or authority to see or use the information.

16

63. Defendants forwarded the Des-Case Confidential Information and Trade Secrets in order to copy, pass off, and misappropriate Plaintiff's products as Defendants' own and they used Plaintiff's protected information to unfairly compete and mislead consumers, which constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64. Defendants' conduct has caused immediate and irreparable harm to Plaintiff, which will continue unless permanently enjoined by the Court. Des-Case is entitled to recover from Defendants all damages it has suffered due to their unfair and wrongful conduct in an amount to be proven at trial. Des-Case is also entitled to treble these damages, pursuant to 15 U.S.C. § 1117.

65. The actions of Defendants evidence wrongful conduct that is willful and deliberate. This deliberate and willful conduct amounts to exceptional circumstances and entitles Des-Case to an award of attorney fees pursuant to 15 U.S.C. § 1117.

**COUNT FIVE:**
**COMMON LAW UNFAIR COMPETITION AGAINST ALL DEFENDANTS**

66. Des-Case incorporates by reference all paragraphs above as if fully restated herein.

67. Defendants have unfairly competed with Des-Case by intentionally seeking to pass off their products as those of Des-Case and/or cause confusion as to the source of their products, and causing actual confusion as to the source of their products.

68. Defendants have also unfairly competed with Des-Case by violating their contracts with Des-Case, causing others to breach their contracts with Des-Case, illicitly obtaining and using Des-Case's Confidential Information, using Confidential Information regarding Des-Case's customers, and operating in a deceptive and improper manner by, among other things, infringing upon Des-Case's intellectual property in various respects.

17

69. Defendants engaged in these activities with the purpose and intent of harming, disrupting, and interfering with Des-Case's business.

70. The Defendants' actions are causing irreparable harm to Des-Case's business, and they will continue to do so unless permanently enjoined by the Court

71. Defendants are jointly and severally liable to Des-Case in an amount to be proven at trial.

**COUNT SIX:**
**VIOLATION OF THE TENNESSEE UNIFORM TRADE SECRETS ACT**
**AGAINST ALL DEFENDANTS**

72. Des-Case incorporates by reference all paragraphs above as if fully restated herein.

73. Defendants have misappropriated, acquired, disclosed and/or converted to their own use trade secrets of Des-Case as that term is defined in the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq*. ("TUTSA").

74. Des-Case has taken all necessary actions to entitle it to protection of its trade secrets under TUTSA.

75. Defendants' actions in misappropriating Des-Case's trade secrets were both willful and malicious.

76. Defendants have profited from their misappropriation of Des-Case's trade secrets, and Des-Case has been immediately and irreparably damaged by Defendants' actions in converting its trade secrets for their own use.

77. Des-Case is entitled to both monetary and injunctive relief against Defendants under TUTSA for their misappropriation of Des-Case's trade secrets, including the actual loss incurred by Des-Case, the unjust enrichment enjoyed by Defendants as a result of their wrongful acts, and exemplary damages as provided for in TUTSA.

**COUNT SEVEN:**
**BREACH OF THE DEFEND TRADE SECRETS ACT**

78.   Des-Case realleges the allegations above and incorporates herein by reference.

79.   The Des-Case Confidential Information and Trade Secrets are used in interstate commerce and constitute trade secrets because they derive independent economic value from not being generally known and are not readily ascertainable by proper means to other persons who can obtain economic value from their disclosure. They are also subject to reasonable efforts to maintain their secrecy.

80.   Defendants knowingly exceeded any permission or authorization they had to use Des-Case's Confidential Information and Trade Secrets by illegally sharing this information for a purpose other than evaluating the Transaction known as Project Purify, thus giving rise to claims under 18 U.S.C. § 1836(b)(1).

81.   Defendants knew they had acquired Des-Case's Confidential Information and Trade Secrets by improper means.

82.   Des-Case's Confidential Information and Trade Secrets are not generally known or readily ascertainable by competitors.

83.   The trade secrets and Confidential Information gave Defendants an economic advantage over Des-Case because it contains proprietary information which is otherwise only available to Des-Case.

84.   Des-Case takes great care to protect its Confidential Information and Trade Secrets by limiting access to individuals and entities that are contractually obligated to maintain their secrecy and use them for the benefit of Des-Case only.

85.   Defendants' actions have been to the detriment of Des-Case, which has suffered extensive damages, caused by Defendants' unauthorized misappropriation of Des-Case's trade

19

secrets, in an amount to be determined at trial. Moreover, Defendants' conduct has caused immediate and irreparable harm, entitling Plaintiff to preliminary and permanent injunctive relief.

86.   Further Plaintiff is entitled to exemplary damages and attorney fees because Defendants' conduct was deliberate and willful.

**COUNT EIGHT:**
**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**
**AGAINST ALL DEFENDANTS**

87.   Des-Case realleges the allegations of all paragraphs above and incorporates them herein by reference.

88.   Defendants misappropriated, copied, and disseminated the Des-Case Confidential Information and Trade Secrets and forwarded the information to unauthorized third parties who had no permission or authority to see the information.

89.   Defendants willfully and knowingly sought to pass off Defendants' products as those of Plaintiff which constitutes an unfair and deceptive act under Tenn. Code Ann § 47-18-104 (b)(1).

90.   Defendants willfully and knowingly sought to create a likelihood of confusion about the source of their products which constitutes an unfair and deceptive act under Tenn. Code Ann § 47-18-104 (b)(2).

91.   Defendants willfully and knowingly sought to cause a likelihood of confusion as to affiliation, connection or association with, or certification by, Des-Case which constitutes an unfair and deceptive act under Tenn. Code Ann § 47-18-104 (b)(3).

92.   The Defendants willfully and knowingly engaged in these unfair and deceptive trade practices.

93.   The Defendants' actions are causing irreparable harm to Des-Case's business, and they will continue to do so unless permanently enjoined by the Court.

94.   Des-Case has been damaged by these unfair and deceptive trade practices, and Des-Case is entitled to recover three times its actual damages, in addition to its costs and attorneys' fees incurred as a result of this action.

## PRAYER FOR RELIEF

Wherefore, Des-Case respectfully prays for the following relief:

95.   That the Court find that Madison Industries has breached its NDA with Craig-Hallum and with Des-Case as a Third-Party Beneficiary;

96.   That the Court find that Defendants are liable for civil conspiracy;

97.   That the Court find the Defendants are liable for intentional interference with contract and with prospective business advantage;

98.   That the Court find that the Defendants are liable for unfair competition, both under the Lanham Act and the common law;

99.   That the Court find that the Defendants are liable for violation of the Tennessee Uniform Trade Secrets Act and that their actions in doing so were willful and malicious;

100.  That the Court find that the Defendants are liable under the Defend Trade Secrets Act and that their actions in doing so were willful and malicious;

101.  That the Court find that the Defendants are liable for violations of the Tennessee Consumer Protection Act and that their actions in doing so were willful and malicious;

102.  That the Court find that the Defendants are jointly and severally liable for compensatory damages under all causes of action to Des-Case in an amount to be proven at trial;

103. That the Court award Des-Case exemplary and/or treble damages to the extent permitted by law;

104. That the Court award Des-Case punitive damages in an amount sufficient to punish Defendants for their intentional, malicious, and reckless misconduct, and to deter others from similar misconduct;

105. That the Court issue a Preliminary and/or Permanent Injunction against Defendants in order to prevent immediate and irreparable harm to Des-Case;

106. That the Court award Des-Case its costs and reasonable attorney's fees incurred in prosecuting this action;

107. That the Court award Des-Case pre-judgment interest;

108. That the Court grant all further relief to Des-Case as it deems equitable and justified, including attorney's fees to the extent permitted by law.

DATED this 21st day of November, 2017.

Respectfully Submitted,

Paige Waldrop Mills (B.P.R. No. 16,218)
Bass, Berry & Sims PLC
150 Third Avenue South; Ste 2800
Nashville, TN 37201
Telephone: (615) 742-6200
Email: pmills@bassberry.com

*Attorneys for Des-Case Corporation*

22

## VERIFICATION

I swear and affirm that the foregoing Complaint is true and accurate to the best of my knowledge, information, and belief.

DES-CASE CORPORATION

By: Brian Gleason
Its: President and Chief Executive Officer

23846684.5

23